# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|                                                                 |                                 |
| --------------------------------------------------------------- | ------------------------------- |
| MARIA JONES,<br><br>   Plaintiff,<br><br>v.<br><br>JENNIFER GRANHOLM, Secretary of the United States Department of Energy,<br><br>   Defendant.[1] | Civil Action No. 20-0472 (CKK) |

## MEMORANDUM OPINION
### (June 21, 2021)

Plaintiff Maria Jones brings this action *pro se* against Jennifer Granholm, in her official capacity as the Secretary of the U.S. Department of Energy (the "Defendant" or "Department"), pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* Plaintiff alleges that Department management created a hostile work environment and retaliated against her in response to formal and informal complaints she filed with the Office of Equal Employment Opportunity ("EEO") in 2010. Pending before the Court is Defendant's [11] Motion to Dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6).

Upon consideration of the pleadings, the relevant legal authorities, and the record as a whole,[2] the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's [11] Motion to

---

[1] By operation of Federal Rule of Civil Procedure 25(d), the Secretary of Energy, as former Secretary Danny Brouillette's successor, has been "automatically substituted as a party."

[2] This Memorandum Opinion focuses on the following documents:
- Pl.'s Compl., ECF No. 1;
- Def.'s Mem. of P&A in Supp. of Def.'s Mot. to Dismiss ("Def.'s Mot.."), ECF No. 11;
- Pl.'s Opp'n to Def.'s Mot. to Dismiss and to Amend My Compl. ("Pl.'s Opp'n"), ECF No. 16;
- Def.'s Reply to Pl.'s Opp'n to Def.'s Mot. to Dismiss ("Def.'s Reply"), ECF No. 22; and
- Pl.'s Note in Resp. to Def. ("Pl.'s Sur-Reply"), ECF No. 24.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

Dismiss. Specifically, the Court will **GRANT** Defendant's request to dismiss Plaintiff's discrete retaliation claims, respectively predicated on Plaintiff's removal from the Department's "COOP" emergency response team, the denial of Plaintiff's requested detail assignment, and Plaintiff's proposed removal from federal service. The Court, however, will **DENY** Defendant's request to dismiss Plaintiff's remaining retaliation claims predicated on Plaintiff's September 13, 2010 Counseling Memorandum, her negative 2010 performance review, and her January 5, 2011 Performance Improvement Plan. Next, the Court will **DENY** Defendant's request to dismiss Plaintiff's claim for a retaliatory hostile work environment. Finally, the Court will **DISMISS** Plaintiff's race discrimination and disability claims, as Plaintiff has not provided a plain and concise statement of those claims sufficient to satisfy Federal Rule of Civil Procedure 8.

## I. BACKGROUND

### A. Factual Background

Plaintiff is an African American woman who began working for the Department of Energy in 1987, as a GS-5 Secretary in the International Statistics Branch. Compl. ¶ 5.[3] In 1989, Plaintiff was hired by the Office of Budget and Management Division, Naval Petroleum and Oil Share Reserves ("NPOSR"), Office of Fossil Energy ("FE"), as a GS-6 Secretary. *Id.* Plaintiff was then later promoted to a GS-12 Program Analyst position within NPOSR, and also earned a Bachelor's of Science in Accounting during this time period. *Id.* In 2003, the Department transferred Plaintiff to the Office of Budget and Financial Management ("OBFM"), where she served as a GS-12 Program Analyst, working on "budget execution, budget formulation, contracts, [and]

---

[3] On April 13, 2020, Plaintiff filed an "Amendment to [her] Complaint" to correct a typographical error in the title of her original complaint. Am. to Compl., ECF No. 4, at 1. This amendment does not impose any substantive changes to Plaintiff's original complaint and the Court, therefore, cites to Plaintiff's original complaint ("Compl."), *see* Compl., ECF No. 1, as the operative pleading throughout this Memorandum Opinion.

procurement." *Id.* ¶ 6. At OBFM, Plaintiff served under the supervision of Mr. Charles Roy, the Director of OBFM until 2009, his successor, Ms. Edna Thomas, and Mr. Robert Pafe, Plaintiff's immediate supervisor. *Id.* ¶ 8. In her present complaint, Plaintiff describes a complex web of alleged discrimination, harassment, and retaliation that she experienced at OBFM under these supervisors. *See* Pl.'s Opp'n, ECF No. 16, at 9.

To begin, Plaintiff alleges that she was subjected to racial discrimination during her tenure within OBFM. Plaintiff alleges that while Mr. Roy was the Director of OBFM, Plaintiff "was the only African-American assigned to [the] office under the supervision of Mr. Roy and Mr. Pafe," both of whom are white. Compl. ¶ 8. When "working under the supervision of Mr. Roy and Mr. Pafe," Plaintiff "was embarrassed and humiliated by her managers, because they isolated her from her white co-workers." *Id.* ¶ 9. For example, Plaintiff alleges that Mr. Roy and Mr. Pafe "relocated all white staff members to another location and left [Plaintiff] in an empty office setting" by herself, without "equipment, files, furniture, [or] supplies." *Id.* ¶ 10. Moreover, Ms. Thomas, who became the OBFM Director in 2010, allegedly used "racial slurs" when referring to employees, including calling one staff member a "House Nigger." *Id.* ¶ 12. Furthermore, Plaintiff alleges that multiple of her white colleagues were delinquent in their work or openly insubordinate to the OBFM supervisors, yet did not receive any disciplinary sanctions. *See id.* ¶¶ 51–56.

Plaintiff also presents numerous allegations regarding the retaliatory treatment she received at OBFM after filing multiple EEO complaints. On June 4, 2010, Plaintiff filed an informal EEO complaint regarding improper references to a prior EEO settlement allegedly included within one of her OBFM performance reviews. *See* June 4, 2010 EEO Compl., ECF No. 11-1, at 3, 5–7. Plaintiff alleges that Ms. Thomas learned of this EEO complaint and, on July 19, 2010, sent Plaintiff an "inappropriate" and "harassing" email referencing the informal EEO complaint. *See*

Compl. ¶ 12.  Through this July 19, 2010 email, Ms. Thomas also removed Plaintiff from the OBFM "COOP" team—a group within OBFM assembled to ensure continued operations during office emergencies—and asked Plaintiff to return her work-issued phone.  *Id.* ¶ 13.  Only a few days after Plaintiff's removal from the COOP team, however, both Ms. Thomas and Mr. Pafe informed Plaintiff that she was "on track to meet expectations" for her Fiscal Year ("FY") 2010 mid-year performance evaluation.  *Id.* ¶ 14.

On July 26, 2010, Plaintiff filed a formal EEO complaint that specifically asserted harassment allegations against Ms. Thomas.  *See* July 26, 2010 EEO Compl., ECF No. 11-1, at 9–17.  In response to this new EEO complaint, Mr. Pafe allegedly "started harassing and retaliating against Plaintiff."  Compl. ¶ 16.  On September 13, 2010, for example, Mr. Pafe sent Plaintiff a "Counseling Memorandum," which claimed that her performance had "adversely affected the productivity of [the] office."  Counseling Mem., ECF No. 1-2, at 17.  According to Plaintiff, the negative events listed in the Counseling Memorandum were factually incorrect and fabricated in order to retaliate against her for her prior EEO activity.  Compl. ¶¶ 17–26.  In particular, Plaintiff claims that she was counseled for not completing an assignment that she had actually completed, *id.* ¶ 19, for not submitting comments to the Chief Financial Officer regarding a memorandum when she did in fact submit comments to the document, *id.* ¶ 23, and was "sabotage[d]" by Mr. Pafe when he required her to work from a "large spreadsheet in PDF format," as opposed to excel, so that she "[w]ould miss the deadline" to complete an assignment, *id.* ¶ 24.  Moreover, the allegedly "false information" listed in the September 13, 2010 Counseling Memorandum was not included in Plaintiff's mid-year performance evaluation, which Mr. Pafe and Ms. Thomas had each signed in July and August 2010, respectively.  *Id.* ¶¶ 18, 21.

Next, Plaintiff contends that Mr. Pafe and Ms. Thomas continued to retaliate against her by giving Plaintiff a "Fails to Meet Expectation" rating on her final Fiscal Year ("FY") 2010 performance evaluation. *Id.* ¶ 27. Plaintiff received this "adverse" performance review on December 1, 2010, after she returned from a period of medical leave. *Id.* ¶¶ 27–28. And then on December 2, 2010, Mr. Pafe denied Plaintiff's medical request to telework, citing to Plaintiff's poor FY 2010 performance review as support for his denial. *Id.* ¶ 30; *see* Dec. 2, 2010 Email, ECF No. 1-2, at 45 (stating Plaintiff was "not eligible for medical flexplace because of [her] rating"). Plaintiff relatedly alleges that, shortly after her return from medical leave, the Department held a fire drill that required her to "walk down four flights of stairs." Compl. ¶ 31. This physical exertion was difficult for Plaintiff given her medical condition, and Plaintiff alleges that Mr. Pafe "laughed" at Plaintiff's struggles during the fire drill. *Id.*

Plaintiff also alleges that the retaliation from her OBFM supervisors continued into 2011. On January 5, 2011, Mr. Pafe placed Plaintiff on a Performance Improvement Plan ("PIP"), which afforded her a 120-day period within which to improve her work product. *Id.* ¶ 28. The very next day, Plaintiff filed an amendment to her pending EEO complaint from July 26, 2010, to complain about her newly issued PIP. *See* Jan. 6, 2011 EEO Compl., ECF No. 11-1, at 18–21. According to Plaintiff, the PIP was yet another form of retaliation, as the PIP was "fabricated" and contained numerous factual inaccuracies. Compl. ¶¶ 32–36. Nonetheless, on May 11, 2011, Mr. Pafe notified Plaintiff that "she was going to get fired," *id.* ¶ 37, and two days later, Mr. Pafe informed Plaintiff that she had failed the PIP, *id.* ¶ 38. On August 3, 2011, Plaintiff requested permission to accept a 90-day detail assignment with the Office of Procurement, in an attempt to secure a new position outside of OBFM. *Id.* ¶ 48. Mr. Pafe, however, denied this requested detail assignment, allegedly in furtherance of his desire to "remove . . . Plaintiff from federal service." *Id.*

Then, on August 25, 2011, Mr. Pafe issued Plaintiff a memorandum titled "Proposal to Remove for Unacceptable Performance." *Id.* ¶ 39. This memorandum stated that Plaintiff was to be terminated because of her "failure to perform at a meets expectations level on [her] budget formulation, execution performance elements, and [Plaintiff's] failure to display initiative, effort and commitment towards completing assignments in a timely manner while maintaining the integrity of the organization." Aug. 25, 2011 Mem., ECF No. 1-2, at 51. Plaintiff again alleges that many of the statements in the removal proposal were "not true," Compl. ¶ 39, and that Mr. Pafe "plac[ed] nonfactual statements in documents to bolster his adverse documents," *id.* ¶ 47. Plaintiff, however, eventually resigned from her position at OBFM on February 16, 2012, one day prior to the effective date of her removal, in order to "preserve [her] retirement benefits." Pl.'s Opp'n at 9.

## B.  Procedural History

Throughout the course of her alleged mistreatment at OBFM, Plaintiff engaged in parallel administrative proceedings that are relevant to the resolution of Defendant's [11] Motion to Dismiss. The Court will describe those proceedings below.

### 1.  Arbitration & MSPB Proceedings

At the conclusion of Plaintiff's January 5, 2011 PIP, the Department proposed to remove Plaintiff for "unacceptable performance," effective February 17, 2012. Aug. 25, 2011 Mem., ECF No. 1-2, at 50; Pl.'s Opp'n at 5. In providing Plaintiff with the removal decision, the Department informed her that she had the right to either appeal the proposed removal to the Merit Systems Protection Board ("MSPB" or the "Board") or to challenge the proposal through the negotiated grievance procedure provided by her collective bargaining agreement. *See Jones v. Merit Sys. Prot. Bd.*, 589 F. App'x 972, 973 (Fed. Cir. 2014); *see also* 5 U.S.C. § 7121(e)(1). Plaintiff

ultimately elected to challenge the Department's removal decision through the negotiated grievance procedure, with the stipulated issue before the arbitrator phrased as: "Whether or not the [Department] provided [Plaintiff] with a reasonable opportunity to improve performance before removing her from Federal Service," and if not, "what shall the remedy be?" Pl.'s Opp'n at 5; *see also Jones*, 589 F. App'x at 973. On November 3, 2012, the arbitrator issued a decision that denied Plaintiff's grievance, finding that the Department had given Plaintiff a reasonable opportunity to improve her performance and that the Department's decision to remove Plaintiff from federal service was not unreasonable. *Jones*, 589 F. App'x at 973–74.

On December 2, 2012, following her adverse arbitration ruling, Plaintiff decided to file an additional appeal of her removal, this time with the MSPB. *Id.* at 974. An MSPB administrative judge ("AJ"), however, issued an order in February 2013, finding that the MSPB lacked jurisdiction over Plaintiff's appeal because Plaintiff had already filed an arbitral grievance regarding her removal and, pursuant to 5 U.S.C. § 7121(e)(1), "an employee challenging an adverse action [is required] to choose between" an applicable grievance procedure *or* an appeal to the MSPB, but cannot pursue both. *Jones*, 589 F. App'x at 974. The Board later affirmed the AJ's jurisdictional finding, explaining that Plaintiff's MSPB appeal "raised only a challenge to her removal, which was precluded under 5 U.S.C. § 7121(e)(1)." *Jones*, 589 F. App'x at 974. The Board further explained that, although Plaintiff's collective bargaining agreement allowed for retaliation grievances, Plaintiff "did not raise [an] EEO retaliation claim in the proceeding before the arbitrator." *Id.* at 976. Finally, on November 13, 2018, the Federal Circuit affirmed the Board's jurisdictional rulings dismissing Plaintiff's MSPB appeals. *See id.* at 975.

## 2. EEOC Proceedings

Apart from her grievance proceeding and appeal to the MSPB, Plaintiff also submitted separate EEO complaints against the Department. As discussed above, Plaintiff first filed an informal EEO complaint on June 4, 2010, when she perceived that her OBFM supervisors were making inappropriate references to a previous EEO complaint that had been resolved by settlement agreement. *See* June 4, 2010 EEO Compl., ECF No. 11-1, at 3, 5–7. Then, on July 26, 2010, Plaintiff filed a formal EEO complaint for retaliation in the form of "harassment" and a "hostile work environment." July 26, 2010 EEO Compl., ECF No. 11-1, at 9. Plaintiff's July 26, 2010 EEO complaint specifically complained of Ms. Thomas's July 19, 2010 decision to remove Plaintiff from the OBFM "COOP" team, allegedly in retaliation for Plaintiff's informal EEO complaint filed in June 2010. *Id.* at 12. Plaintiff later filed an amended version of her formal EEO complaint on January 6, 2011, again claiming that she was subjected to a "hostile work environment" and "retaliation in the form of harassment." Jan. 6, 2011 EEO Am. Compl., ECF No. 11-1, at 20. In her amendment, Plaintiff complained that Mr. Pafe and Ms. Thomas retaliated against her for "filing an EEO complaint," and specifically identified her "negative [FY 2010] performance appraisal," her January 5, 2011 PIP, and her September 13, 2010 "Counseling Memorandum" as retaliatory adverse employment actions taken against her. *Id.* at 18. In her January 6, 2011 EEO amendment, Plaintiff also checked the complaint box for "disability," although Plaintiff did not specifically reference any disability in her narrative description. *Id.* at 20.

On February 1, 2011, the Department acknowledged receipt of Plaintiff's amended EEO complaint and accepted Plaintiff's allegations of harassment and a hostile work environment in retaliation for her "prior EEO activity." *See* Am. Not. of Acceptance, ECF No. 11-2, at 2. The

Department's notice also acknowledged eight alleged adverse actions for investigation, including Ms. Thomas's decision to remove Plaintiff from the COOP team, Plaintiff's negative FY 2010 performance review, Plaintiff's September 13, 2010 Counseling Memorandum, and Plaintiff's January 5, 2011 PIP. *See id.* at 3. On July 26, 2011, the Department informed Plaintiff that the investigation of her complaint had been completed and that she had the right to request a hearing before an EEOC administrative judge. *See* Not. of Hr'g, ECF No. 11-3, at 2. Plaintiff subsequently requested such a hearing on her complaint, *see id.* at 4, which eventually occurred, after substantial delay, in February 2018, *see* Apr. 5, 2018 EEOC Dec., ECF No. 11-4, at 5. On April 5, 2018, the assigned EEOC administrative judge issued a decision in favor of the Department, denying each of Plaintiff's employment discrimination claims. *See id.*; Nov. 22, 2019 EEOC Decision, ECF No. 1-1, at 3. The Department then subsequently adopted the administrative judge's findings in its final order, concluding that Plaintiff "failed to prove that the [Department] subjected her to discrimination as alleged." Nov. 22, 2019 EEOC Decision, ECF No. 1-1, at 3. On November 22, 2019, the EEOC issued its final decision, affirming the Department's final order and informing Plaintiff that she had the right to file a civil action against the Department within ninety days of receipt. *See id.* at 5, 6.

### 3. Present Action

Plaintiff, proceeding *pro se*, commenced this present action on February 19, 2020, exercising her right to file a civil action within ninety days of the EEOC's final decision on November 22, 2019. Plaintiff's *pro se* pleadings are not a model of clarity. In her complaint, however, Plaintiff does include a section entitled "Causes of Action," which alleges that she suffered a "hostile work environment" and "harassment in the form of retaliation." *Id.* at 20. Plaintiff's complaint also makes allegations of disparate racial treatment. *See id.* at 2, 20–21.

Finally, Plaintiff's complaint includes a passing reference to a "deni[al] of reasonable accommodations" at OBFM for Plaintiff's medical condition. *See id.* at 2. Collectively, the Court broadly reads these allegations as an attempt to assert four separate claims, respectively for: (1) retaliation, (2) a hostile work environment, (3) race discrimination, and (4) a disability-based claim. *See* disc. *infra* at § III (discussing comprehensively the contours of Plaintiff's *pro se* allegations and purported claims).

On August 31, 2020, Defendant filed its pending [11] Motion to Dismiss, asserting that Plaintiff's pleadings should be dismissed for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). The parties have now completed briefing on Defendant's Motion and, accordingly, Defendant's Motion is ripe for this Court's review.

## II.    LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a), "in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Rule 12(b)(6) provides a vehicle for parties to challenge the sufficiency of a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (internal citations omitted). Rather, a complaint must contain sufficient factual allegations that if accepted as true, "state a claim to relief that is plausible on its face." *Id.* at 570.

A claim has "facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  When considering a Rule 12(b)(6) motion to dismiss, a court must construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from the plaintiff's well-pleaded factual allegations.  *Owens v. BNP Paribas, S.A.*, 897 F.3d 266, 272 (D.C. Cir. 2018).  Where, as here, an action is brought by a *pro se* plaintiff, the Court must take particular care to construe the plaintiff's filings liberally for such complaints are held "to less stringent standards than formal pleadings drafted by lawyers."  *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *see Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999).

## III.    DISCUSSION

For the reasons set forth herein, the Court will **GRANT** Defendant's motion to dismiss Plaintiff's discrete retaliation claims predicated on Plaintiff's removal from the Department's "COOP" emergency response team, the denial of Plaintiff's requested detail assignment, and Plaintiff's proposed removal from federal service.  The Court, however, will **DENY** Defendant's motion to dismiss Plaintiff's remaining retaliation claims, predicated on Plaintiff's September 13, 2010 Counseling Memorandum, her negative FY 2010 performance review, and her January 5, 2011 Performance Improvement Plan.  Next, the Court will **DENY** Defendant's motion to dismiss Plaintiff's claim for a retaliatory hostile work environment.  Finally, the Court will **DISMISS** Plaintiff's race discrimination and disability claims, as Plaintiff has not provided a plain and concise statement of those claims sufficient to satisfy Federal Rule of Civil Procedure 8.

### A.   Retaliation

Plaintiff first asserts a Title VII retaliation claim against Defendant.  *See* Compl. at 2, 20; Pl.'s Opp'n at 8–9.  To state a claim for retaliation under Title VII, a plaintiff must demonstrate

that: (1) she engaged in a statutorily protected activity, (2) the employer took an adverse employment action, and (3) there is a causal relationship between the protected activity and the adverse employment action. *Baird v. Gotbaum*, 792 F.3d 166, 168 (D.C. Cir. 2015). Moreover, the adverse actions alleged must be "'material'—*i.e.*, 'harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Id.* (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).

In this case, Plaintiff alleges that her OBFM supervisors subjected her to multiple adverse actions in retaliation for Plaintiff's EEO complaints in June and July of 2010. *See* Compl. ¶¶ 12, 16. Specifically, Plaintiff identifies six allegedly retaliatory adverse employment actions:

> (1) Plaintiff's June 2010 removal from the "COOP" team,
>
> (2) Plaintiff's September 13, 2010 Counseling Memorandum,
>
> (3) Plaintiff's negative FY 2010 performance review,
>
> (4) Plaintiff's January 5, 2011 PIP,
>
> (5) the denial of Plaintiff's August 3, 2011 requested detail assignment, and
>
> (6) Plaintiff's proposed removal from federal service on August 25, 2011.

*See* Pl.'s Opp'n at 2; Compl. ¶¶ 12–48. Defendant does not challenge that Plaintiff's EEO complaints constituted "protected activity" under Title VII. *See* 42 U.S.C. § 2000e–3(a); *Walker v. Mattis*, 319 F. Supp. 3d 267, 271 (D.D.C. 2018) ("Filing a complaint of discrimination, as Plaintiff did here, plainly constitutes protected activity."). Instead, Defendant asserts multiple reasons why Plaintiff's six alleged "adverse actions" cannot support a viable retaliation claim under Title VII. *See* Def.'s Mot. at 14–24. The Court will address each of these arguments in turn.

### 1. Exhaustion

To begin, Defendant raises an exhaustion challenge against certain of Plaintiff's retaliation claims. "Exhaustion is an essential element of [a] Title VII" claim. *Poole v. United States Gov't Publ'g Off.*, 258 F. Supp. 3d 193, 199 (D.D.C. 2017) (quotation omitted). Generally, exhaustion "means filing an administrative charge with the EEOC and allowing the agency time to act on the charge before commencing litigation." *Haynes v. D.C. Water & Sewer Auth.*, 924 F.3d 519, 526 (D.C. Cir. 2019) (cleaned up). "Exhaustion is required in order to give federal agencies an opportunity to handle matters internally whenever possible to ensure that the federal courts are burdened only when reasonably necessary." *Brown v. Marsh*, 777 F.2d 8, 14 (D.C. Cir. 1985). The "untimely exhaustion of administrative remedies is an affirmative defense, [which] the defendant bears the responsibility of pleading and proving." *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997) (citation omitted). A motion to dismiss for "failure to exhaust administrative remedies is properly addressed under [Rule] 12(b)(6)." *Hicklin v. McDonald*, 110 F. Supp. 3d 16, 18 (D.D.C. 2015).

In its present motion, Defendant contends that Plaintiff has failed to administratively exhaust her retaliation claims predicated on (1) the August 3, 2011 denial of Plaintiff's request for a detail assignment, and (2) the August 25, 2011 proposal to remove Plaintiff from federal service. *See* Def.'s Mot. at 14–19; Compl. ¶¶ 39, 48. For the reasons set forth below, the Court agrees with Defendant and concludes that these retaliation claims must be **DISMISSED** for failure to exhaust.

#### a. August 3, 2011 Detail Denial

Defendant's first exhaustion challenge pertains to the allegedly retaliatory denial of a detail assignment Plaintiff requested in August 2011. Specifically, Plaintiff alleges that on August 3, 2011, the Office of Procurement offered her a 90-day detail assignment, which might have resulted

in a permanent job offer. *See* Compl. ¶ 48. According to Plaintiff, however, Mr. Pafe and Ms. Thomas, refused Plaintiff's request to accept the detail assignment, in retaliation for Plaintiff's prior EEO complaints. *Id.*; *see also* Pl.'s Opp'n at 10. Defendant now argues that Plaintiff failed to exhaust her retaliation claim based on this alleged denial of Plaintiff's August 2011 detail request. *See* Compl. ¶ 48; Pl.'s Opp'n at 2. For the reasons set forth below, the Court agrees.

As an initial matter, Plaintiff did not complain of her August 2011 detail denial in any of the administrative proceedings that preceded this civil action. First, Plaintiff filed her predicate EEO complaints on June 4, 2010 and July 26, 2010, with a final amendment on January 6, 2011. *See* disc. *supra* at § I.B.2. Each of these EEO complaints *pre-dated* Plaintiff's August 2011 detail request denial and, logically, none of these EEO complaints could have raised Plaintiff's denied detail request as an adverse employment action. Next, the Court does not find that Plaintiff raised her August 2011 detail denial in either her contractual grievance arbitration, or in any of her proceedings before the MSPB. *See Jones v. Merit Sys. Prot. Bd.*, 589 F. App'x 972, 973 (Fed. Cir. 2014) (explaining that Plaintiff only raised issues regarding her removal from federal service before the arbitrator and the MSPB). In short, Plaintiff simply did not raise the denial of her August 2011 detail request as an adverse action in any of the administrative proceedings preceding her action before this Court. Notably, Plaintiff's opposition brief does not directly contest her failure to raise the August 2011 detail denial in an administrative proceeding. *See* Pl.'s Opp'n at 10. As such, the Court finds that Plaintiff has failed to administratively exhaust this specific retaliation claim.

Here, it bears mentioning that a minority of courts in this jurisdiction "have found that *separate exhaustion* for subsequent . . . retaliatory acts *is not required* if they are 'of a like kind to the retaliatory acts alleged in [a prior] EEOC charge[.]'" *Moran v. Barr*, No. CV 18-1986 (CKK),

2020 WL 4286825, at *10 (D.D.C. July 27, 2020) (emphasis added) (quoting *Mount v. Johnson*, 36 F. Supp. 3d 74, 85 (D.D.C. 2014)).  Under such an approach, Plaintiff would not necessarily need to specifically exhaust her denied detail request claim, if it was sufficiently related to her earlier-filed EEO claims.  This minority view, however, is in direct tension with the Supreme Court's holding that under Title VII "each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice,'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002), and the majority of courts in this jurisdiction now require plaintiffs to exhaust each discrete claim of retaliation, *see Moran*, 2020 WL 4286825, at *10 (collecting cases).  Nonetheless, the D.C. Circuit has not yet addressed this issue, leaving the minority view at least partially in effect.  *See, e.g.*, *Payne v. Salazar*, 619 F.3d 56, 65 (D.C. Cir. 2010) (explaining that it "need not decide whether *Morgan*" now requires individualized exhaustion of discrete claims).

Regardless, even the minority approach to exhaustion would not save Plaintiff from her failure to raise her denied detail claim administratively.  For a non-exhausted charge to be considered "reasonably related" to an earlier filed charge under the minority view of exhaustion, "it must at a minimum . . . arise from the administrative investigation that can reasonably be expected to follow" the original charge.  *Payne*, 619 F.3d at 65.  Here, however, the Department *concluded* its investigation of Plaintiff's EEO complaints on July 26, 2011, *before* Plaintiff even learned of the detail assignment on August 3, 2011.  *See* Not. of Hr'g, ECF No. 11-3, at 2.  As such, Plaintiff's complaint regarding her denied detail assignment could not have arisen during the Department's investigation into Plaintiff's prior EEO complaints.  *See, e.g.*, *Payne*, 619 F.3d at 65 (Claims "concerning the retaliatory conduct that took place in January 2008 could not possibly have 'arisen from the administrative investigation' that followed the EEO complaints . . . filed . . . in 2004 . . . because the administrative investigation of those complaints ended in September

2007[.]"). Even under the minority view, therefore, Plaintiff did not properly exhaust her retaliation claim predicated on her denied request for detail assignment in August 2011.

For the reasons set forth above, the Court concludes that Plaintiff did not exhaust her retaliation claim based on her August 3, 2011 detail assignment denial. *See* Compl. ¶ 48; Pl.'s Opp'n at 2. Accordingly, the Court will **DISMISS** that claim for failure to exhaust.

### b. August 25, 2011 Proposed Removal

Defendant also argues that Plaintiff failed to exhaust her claim that the Department retaliated against her in August 2011 when Plaintiff's supervisors proposed removing her from federal service. *See* Compl. ¶ 39; Pl.'s Opp'n at 2. Here again, this alleged adverse action occurred in August 2011, well after Plaintiff's EEO complaints in June and July of 2010, and logically could not have been raised therein. Moreover, as with the August 3, 2011 detail denial, Plaintiff's proposed removal on August 25, 2011 post-dated the Department's investigation into Plaintiff's EEO complaints, which concluded on July 26, 2011. For these reasons, the Court finds no basis to hold that Plaintiff exhausted her retaliatory removal claim through the traditional EEO process.

Plaintiff did, however, challenge her proposed removal first through a negotiated grievance procedure under her collective bargaining agreement and then later before the Merit System Protection Board. *See* disc. *supra* at § I.B.1. Nonetheless, Plaintiff still failed—for multiple reasons—to properly exhaust her *retaliatory removal* claim through these administrative channels. The first of these reasons is that Plaintiff *never raised a retaliatory removal claim* in her grievance proceeding before the arbitrator. Instead, "[t]he only stipulated issue that was before the arbitrator was[:] 'Whether or not the Department of Energy provided [Plaintiff] with a reasonable opportunity to improve performance before removing her from Federal Service?" and, "If not, what shall the remedy be?" Pl.'s Opp'n at 5. Therefore, Plaintiff's claim that her August 2011

proposed removal was retaliatory never arose during her grievance arbitration. *See Jones v. Merit Sys. Prot. Bd.*, 589 F. App'x 972, 976 (Fed. Cir. 2014) ("The record reflects that [Plaintiff's] governing collective bargaining agreement allowed for claims of discrimination to be raised in the course of a grievance proceeding. . . . [W]e affirm the Board's finding that [Plaintiff] did not raise her EEO retaliation claim in the proceeding before the arbitrator . . . . "); *see id.* (noting that Plaintiff stated, "My case that was heard before the arbitrator did not address retaliation"). For this reason alone, Plaintiff failed to properly exhaust her retaliatory removal claim through the appropriate administrative channels.

Next, even if Plaintiff had raised a retaliatory removal claim during her grievance proceeding, she failed to properly follow that administrative channel to its conclusion. Simply put, "[a]n employee who pursues [her] claims under the negotiated grievance procedure . . . may reach federal court only after appealing the final decision in the grievance process to the EEOC." *Koch v. Walter*, 934 F. Supp. 2d 261, 269 (D.D.C. 2013) (citing *Johnson v. Peterson*, 996 F.2d 397, 400–01 (D.C. Cir. 1993)); *see also* 5 U.S.C. § 7121(d). Here, the assigned arbitrator "issued a decision on November 3, 2012, which denied [Plaintiff's] grievance." *Jones*, 589 F. App'x at 973. Thereafter, however, Plaintiff did not appeal this adverse arbitral decision up to the EEOC, but instead appealed the arbitral decision before *the MSPB. Id.* Consequently, Plaintiff's grievance never reached the EEOC to complete the full administrative channel required before filing a civil action in the district court. *See Koch*, 934 F. Supp. 2d at 268–69. This shortcoming represents another failure by Plaintiff to exhaust her claim regarding her removal from federal service before filing a civil action before this Court.

Finally, Plaintiff's subsequent administrative proceedings before the MSPB also failed to properly exhaust her retaliatory removal claim. To start, Plaintiff's initial decision to challenge

her proposed removal through a contractual grievance procedure foreclosed her ability to subsequently challenge that same removal decision through the MSPB. *See* 5 U.S.C. § 7121(e)(1) ("Matters covered under sections 4303 and 7512 of this title which also fall within the coverage of the negotiated grievance procedure may, in the discretion of the aggrieved employee, be raised either under the appellate procedures of [the MSPB] or under the negotiated grievance procedure, *but not both*.") (emphasis added). Plaintiff's initial decision to challenge her proposed removal through a grievance procedure was "irrevocable." *Koch*, 934 F. Supp. 2d at 268. And indeed, the MSPB dismissed Plaintiff's challenge to her proposed removal under 5 U.S.C. § 7121(e)(1) because Plaintiff "had earlier elected to pursue such challenge through [her] negotiated grievance procedures." *Jones*, 589 F. App'x at 974. Furthermore, even if Plaintiff *could have* exhausted her retaliatory removal claim through her MSPB proceedings, the Board concluded that she did not raise any involuntary retirement claim therein. *See id.* Consequently, Plaintiff's administrative proceedings through the MSPB did not properly exhaust the retaliatory removal claim she now presents to this Court.

For the reasons set forth above, the Court concludes that Plaintiff did not exhaust her retaliation claim based on the Department's August 25, 2011 proposal to remove her from federal service. *See* Compl. ¶ 39; Pl.'s Opp'n at 2. Accordingly, the Court will **DISMISS** this claim for failure to exhaust as well.

### c. Equitable Considerations

In the Title VII context, "administrative exhaustion requirements are not jurisdictional." *Niskey v. Kelly*, 859 F.3d 1, 7 (D.C. Cir. 2017); *see also Artis v. Bernanke*, 630 F.3d 1031, 1034 n.4 (D.C. Cir. 2011). Therefore, "an employee who missteps in the [exhaustion] process may avoid dismissal if [s]he qualifies for equitable relief . . . by demonstrating good cause for the procedural

failure." *Niskey*, 859 F.3d at 7; *see also Rahimi v. Weinstein*, 271 F. Supp. 3d 98, 102–03 (D.D.C. 2017) ("The administrative exhaustion requirement in Title VII cases may be excused for equitable reasons . . . ").  Once a defendant has met its burden of asserting a viable exhaustion defense, however, the plaintiff must offer countervailing facts "supporting equitable avoidance of the defense." *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997).

Here, the Court concludes that equitable considerations do not absolve Plaintiff of her failure to exhaust her retaliation claims based upon her denied detail request and proposed removal from federal service.  To begin, Plaintiff does not assert nor does the record reflect that Defendant took "active steps to prevent the plaintiff" from presenting these claims administratively.  *Currier v. Radio Free Europe/Radio Liberty, Inc.*, 159 F.3d 1363, 1367 (D.C. Cir. 1998).  To the contrary, Plaintiff has demonstrated her ability to file multiple EEO complaints, *see* disc. *supra* at § I.B.2, invoke contractual grievance procedures, and file claims before the MSPB, *see* disc. *supra* at § I.B.1.  And notably, Plaintiff has also shown her ability to *amend* a pending EEO complaint to reflect subsequent instances of alleged wrongdoing.  *See* Jan. 6, 2011 EEO Am. Compl., ECF No. 11-1, at 18–21.  Yet, despite this capacity, Plaintiff did not raise a retaliation claim based upon either her August 3, 2011 detail denial or her August 25, 2011 proposed removal, at the administrative level.  Accordingly, these retaliation claims were not part of the EEO proceeding that ultimately resulted in the present action before this Court.  *See* Nov. 22, 2019 EEOC Decision, ECF No. 1-1, at 1–2 (listing the "issues presented").  For these reasons, the Court finds that equitable considerations do not excuse Plaintiff's failure to exhaust her retaliation claims based upon her denied detail request and proposed removal from federal service.

### 2. Materially Adverse Actions

Beyond its exhaustion defense, Defendant also argues that certain of Plaintiff's alleged "adverse actions" were not "materially" adverse. *See* Def.'s Mot. at 19–23. "An employee fails to state a retaliation claim if she has not alleged a materially adverse action." *Tyes-Williams v. Whitaker*, 361 F. Supp. 3d 1, 12 (D.D.C. 2019). For the purposes of a Title VII retaliation claim, an employment action is "materially" adverse where it "well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)). Importantly, "the D.C. Circuit has indicated that work-related retaliation must have 'tangible job consequences' in order to qualify as materially adverse." *Wesley v. Georgetown Univ.*, No. CV 18-1539 (BAH), 2018 WL 5777396, at *5 (D.D.C. Nov. 2, 2018) (quoting *Taylor v. Solis*, 571 F.3d 1313, 1321 (D.C. Cir. 2009)). Ultimately, "'the significance of any given act of retaliation' and therefore its potential to deter discrimination complaints, 'will often depend on the particular circumstances.'" *Wesley*, 2018 WL 5777396, at *6 (quoting *Burlington N.*, 548 U.S. at 69)).

In its present motion, Defendant argues that three of Plaintiff's allegedly adverse employment actions are not "materially" adverse: (1) Plaintiff's June 2010 removal from the "COOP" team, (2) the September 13, 2010 Counseling Memorandum, and (3) Plaintiff's negative FY 2010 performance review. *See* Def.'s Mot. at 21–22.[4] The Court will address each of these alleged adverse actions below.

---

[4] Defendant also contends that Plaintiff's August 3, 2011 detail assignment denial was not a "materially" adverse employment action. *See* Def.'s Mot. at 22–23. The Court need not reach this argument, however, because it has already concluded that Plaintiff failed to exhaust this retaliation claim. *See* disc. *supra* at § III.A.1.a.

### a. July 2010 COOP Team Removal

Defendant first challenges the materiality of Plaintiff's allegedly retaliatory removal from the OBFM "COOP" team in July 2010. In certain circumstances, "[c]hanges in position and title, including lateral transfers, can be considered adverse employment actions when employees suffer 'materially adverse consequences [for] the terms, conditions, or privileges' of employment." *Coakley-Simelton v. Georgetown Univ.*, No. 18-CV-2014 (DLF), 2020 WL 4569423, at *12 (D.D.C. Aug. 7, 2020) (quoting *Stewart v. Ashcroft*, 352 F.3d 422, 426 (D.C. Cir. 2003)). But a change in job responsibility is not "materially adverse" where the employee did not experience "objectively tangible harm," *Wiley v. Glassman*, 511 F.3d 151, 157 (D.C. Cir. 2007) (quotation omitted), and assertions of such harm must not be "unduly speculative," *Bridgeforth v. Jewell*, 721 F.3d 661, 663 (D.C. Cir. 2013) (quotation omitted).

Here, the Court concludes that Plaintiff's allegations regarding her removal from the COOP team are simply too sparse and speculative to plausibly demonstrate tangible harm. In her complaint, Plaintiff asserts that on July 19, 2010, Ms. Thomas removed Plaintiff "as the procurement person for COOP" and requested that Plaintiff turn in her Blackberry device. Compl. ¶ 13. Ms. Thomas allegedly removed Plaintiff from the COOP team to retaliate against Plaintiff for her informal EEO complaint in June 2010. *Id.* Plaintiff, however, provides almost no factual allegations at all regarding the COOP team or its role within the Department. Instead, Plaintiff describes the COOP team simply as "a team that was assembled in case of emergencies." *Id.* Moreover, Plaintiff fails to provide any details regarding her own responsibilities on the COOP team or, importantly, how her removal from the COOP team affected her responsibilities and status at OBFM. *See Hornsby v. Watt*, 217 F. Supp. 3d 58, 65 (D.D.C. 2016) (explaining that a reassignment is material where is involves "significantly different responsibilities" or "significant

changes in benefits") (quoting *Bridgeforth*, 721 F.3d at 663).  Absent any such factual allegations, there is no basis to conclude that Plaintiff's removal from the COOP team plausibly constituted a materially adverse employment action.  *See, e.g.*, *Hornsby*, 217 F. Supp. 3d at 67 (dismissing retaliation claim at the pleading stage where plaintiff failed to allege facts that showed objectively tangible harm); *Wesley*, 2018 WL 5777396, at *7 (same).  Accordingly, the Court will **DISMISS** Plaintiff's retaliation claim based on her removal from the COOP team.

### b.  September 2010 Counseling Memorandum

Defendant next challenges the materiality of the "Counseling Memorandum" Plaintiff received on September 13, 2010, allegedly in retaliation for her prior EEO complaints.  Compl. ¶ 17.  In *Baloch v. Kempthorne*, 550 F.3d 1191 (D.C. Cir. 2008), the D.C. Circuit found that an employer-issued "letter of counseling" that contained "job-related constructive criticism" did not constitute a materially adverse action sufficient to support a retaliation claim.  *Id.* at 1199; *see also Hyson v. Architect of Capitol*, 802 F. Supp. 2d 84, 102 (D.D.C. 2011) ("A letter of counseling . . . if not abusive in tone or language or a predicate for a more tangible form of adverse action, will rarely constitute materially adverse action under Title VII.").  Nonetheless, a counseling memorandum may be materially adverse where it contains "abusive language," *Locks v. Lew*, 200 F. Supp. 3d 254, 263 (D.D.C. 2016), or where it leads "to consequences like ineligibility for job benefits like promotion, transfer to a favorable location, or an advantageous increase in responsibilities," *Gilliard v. Gruenberg*, 302 F. Supp. 3d 257, 283 (D.D.C. 2018).

At the motion to dismiss stage, Plaintiff has provided just enough factual allegations to plausibly allege that the September 13, 2010 Counseling Memorandum was materially adverse.  Specifically, Plaintiff alleges that the Counseling Memorandum was "fabricated" and included numerous negative reports about her work product that were factually inaccurate.  *See* Compl. ¶¶

17–23. Plaintiff further contends that "[a]ll the language in the Counseling Memorandum was demeaning" and was "emotionally exhausting." Pl.'s Opp'n at 17.[5] Plaintiff also alleges that some of the factually inaccurate statements from her Counseling Memorandum were later used to support her removal from federal service. *See* Compl. ¶ 39; Pl.'s Opp'n at 17–18. Moreover, Plaintiff asserts that the Counseling Memorandum "was a major factor" in her not receiving a "performance bonus, raises, and promotions." Pl.'s Opp'n at 18. While these factual allegations may be disproven on summary judgment, the Court accepts them as true at the pleading stage and, moreover, construes these allegations liberally because of Plaintiff's *pro se* status. *See Richardson*, 193 F.3d at 548. Taken together, these allegations are sufficient to plausibly allege that Plaintiff suffered objectively tangible harm from her Counseling Memorandum, such that it constituted a materially adverse employment action under Title VII. The Court, therefore, **DENIES** Defendant's motion to dismiss Plaintiff's retaliation claim based on her September 13, 2010 Counseling Memorandum.

### c. FY 2010 Performance Evaluation

Finally, Defendant argues that Plaintiff's negative FY 2010 performance evaluation was not a materially adverse employment action. *See* Def.'s Mot. at 22. "Performance evaluations can qualify as materially adverse actions only when they concretely affect the employee's 'position, grade level, salary, or promotion opportunities.'" *Tyes-Williams v. Whitaker*, 361 F. Supp. 3d 1, 13 (D.D.C. 2019) (quoting *Taylor*, 571 F.3d at 1321). For example, a performance evaluation may be "materially adverse" where it is "attached to financial harms." *Baloch*, 550 F.3d at 1199.

Plaintiff alleges that her OBFM supervisors completed her FY 2010 performance evaluation on October 29, 2010, and that her "final performance rating was adverse" in retaliation

---

[5] When adjudicating Defendant's current motion to dismiss, the Court reads "all of the plaintiff's filings together," in light of her *pro se* status. *Richardson v. United States* 193 F.3d 545, 548 (D.C. Cir. 1999).

for her prior EEO complaints.  Compl. ¶ 27.  Plaintiff's FY 2010 evaluation stated that she "Fail[ed] to Meet Expectations."  *Id.*  ¶ 32.  Plaintiff also alleges that in December 2010, she requested to telework because of a diagnosed medical condition, but that Mr. Pafe denied her request specifically "because of [Plaintiff's] final FY 2010 performance rating."  *Id.* ¶ 30.  Moreover, Plaintiff alleges that when Mr. Pafe subsequently proposed her removal in August 2011, he relied on Plaintiff's negative FY 2010 performance evaluation as a justification for the decision.  *See id.* ¶ 40.  Similarly, Plaintiff contends that her FY 2010 performance evaluation placed her job "in jeopardy."  Pl.'s Opp'n at 18.  Construing Plaintiff's *pro se* pleadings liberally at the motion to dismiss stage, the Court concludes that Plaintiff has plausibly alleged that her negative FY 2010 performance evaluation adversely impacted her position at OBFM and, ultimately served as a basis for her removal.  The Court, therefore, **DENIES** Defendant's motion to dismiss Plaintiff's retaliation claim based on her FY 2010 performance evaluation.

### 3.  Causal Connection With Protected Activity

Defendant's last challenge to Plaintiff's retaliation claim turns on the causal connection between Plaintiff's alleged adverse actions and her protected activity, *i.e.*, Plaintiff's EEO complaints.  *See* Def.'s Mot. at 23–24; Def.'s Reply at 4.  A necessary element of any prima facie retaliation claim is a causal link between the protected activity at issue and the adverse actions alleged.  *Hamilton v. Geithner*, 666 F.3d 1344, 1357 (D.C. Cir. 2012).  Courts consider this question of causality by applying the "traditional principles of but-for causation."  *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).  Here, Defendant argues that neither Plaintiff's September 13, 2010 Counseling Memorandum nor Plaintiff's January 5, 2011 Performance Improvement Plan are plausibly connected to her prior EEO Complaints.  *See* Def.'s Mot. at 23–24; Def.'s Reply at 4.

The Court disagrees on both fronts. To begin, Plaintiff alleges that following her informal EEO complaint on June 4, 2010, Ms. Thomas sent Plaintiff an email on July 19, 2010, stating:

> It is always everyone's fault except yours. You are always being harassed. You have this need to claim you are being harassed and to try to pretend that everyone is against you, when everyone can see that this is not true.

Compl. ¶ 13. In response to this email, Plaintiff filed a formal EEO complaint on July 26, 2010, specifically referencing Ms. Thomas's comments. Then less than two months later, on September 13, 2010, Plaintiff received her Counseling Memorandum from Ms. Thomas and Mr. Pafe, which Plaintiff alleges was fabricated and retaliatory. *Id.* ¶ 17. Given Ms. Thomas's apparent displeasure with Plaintiff's EEO activity, and the relatively close temporal proximity between Plaintiff's July 26, 2010 EEO complaint and her September 13, 2010 Counseling Memorandum, the Court finds a plausible causal link between the two events. *See, e.g.*, *Pratt v. Pompeo*, 318 F. Supp. 3d 34, 40 (D.D.C. 2018) (finding a temporal gap of "two months" independently sufficient to plausibly show causality at the pleading stage).

With regards to Plaintiff's January 5, 2011 PIP, Defendant argues that the "time gap" of over five months between the PIP and Plaintiff's EEO complaints "is far too long to permit an inference of causation." Def.'s Mot. at 23. As a general matter, Defendant is correct that a gap of five months between the protected activity and the adverse action is usually too long to independently raise a presumption of causation. *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (approving cases that found three and four-month periods too far removed to establish a causal link). But "a close temporal connection is not the only way to prove causation," *Beckham v. Nat'l R.R. Passenger Corp.*, 590 F. Supp. 2d 82, 89 (D.D.C. 2008), as a plaintiff may also affirmatively demonstrate causality through direct evidence, *see Touvian v. District of Columbia*, 330 F. Supp. 3d 246, 255 (D.D.C. 2018) ("A plaintiff who has direct evidence need not rely on such an inference based on temporal proximity.").

Here, at the motion to dismiss stage, Plaintiff has provided enough factual allegations to affirmatively demonstrate a plausible connection between her EEO complaints and her January 5, 2011 PIP. To begin, the Court again acknowledges Ms. Thomas's July 2010 email to Plaintiff, which directly displays a displeasure with Plaintiff's prior EEO activity. *See* Compl. ¶ 13. Moreover, Plaintiff alleges that the foundation of her PIP rested on falsified "incidents" of poor performance, *id.* ¶ 29, which were inconsistent with her prior performance appraisals that pre-dated her EEO complains in 2010, *id.* ¶ 7. Plaintiff also alleges that her direct supervisor Mr. Pafe began to harass Plaintiff following her July 26, 2010 EEO complaint against Ms. Thomas, *id.* ¶ 16, and then unnecessarily "micromanaged" Plaintiff during her probationary PIP period at the beginning of 2011, *id.* ¶ 45. Taken together, these allegations are sufficient at the motion to dismiss stage to demonstrate a plausible causal link between Plaintiff's prior EEO activity and her January 5, 2011 PIP.

For the reasons set forth above, the Court **DENIES** Defendant's motion to dismiss Plaintiff's retaliation claims on causality grounds. While Defendant may continue to challenge the factual basis for causality later in these proceedings, Plaintiff's causality allegations ultimately "face[] a low hurdle at the motion to dismiss stage." *Winston v. Clough*, 712 F. Supp. 2d 1, 11 (D.D.C. 2011); *see also Menoken v. McGettigan*, 273 F. Supp. 3d 188, 200–01 (D.D.C. 2017), *aff'd sub nom. Menoken v. Pon*, No. 17-5228, 2018 WL 2383278 (D.C. Cir. May 9, 2018) ("[C]ourts in this district have sustained complaints at the Rule 12(b)(6) stage when the plaintiff has merely alleged that he or she was subjected to an adverse action 'because of' protected activity."). As explained above, Plaintiff has cleared this low bar for causality at the pleading stage.

****

In sum, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion to dismiss Plaintiff's Title VII retaliation claim. Specifically, the Court **GRANTS** Defendant's request to dismiss Plaintiff's claims for retaliation based on her August 3, 2011 denied detail assignment and Plaintiff's August 25, 2011 proposed removal, for failure to exhaust those claims administratively. The Court also **GRANTS** Defendant's request to dismiss Plaintiff's retaliation claim based upon Plaintiff's July 2010 removal from the "COOP" team, because Plaintiff has not plausibly alleged that this removal was a "materially adverse" employment action. The Court, however, **DENIES** all Defendant's remaining arguments for the dismissal of Plaintiff's retaliation claim. As such, Plaintiff's claims for retaliation based on her September 13, 2010 Counseling Memorandum, her FY 2010 performance review, and her January 5, 2011 Performance Improvement Plan survive Defendant's [11] Motion to Dismiss.

## B. Hostile Work Environment

In her complaint, Plaintiff also asserts a claim for a "hostile work environment." Compl. at 20. Although Plaintiff ambiguously references "discrimination" in her pleadings, Plaintiff frames her hostile work environment claim as a form of retaliation in response to her EEO complaints. *See, e.g.*, *id.* at 21 ("In violation of Title VII, the Department discriminated against Plaintiff because she made a charge of employment discrimination."). In its motion, the Department reads Plaintiff's complaint to assert only a *retaliatory* hostile work environment claim, *see* Def.'s Mot. at 24–26, and Plaintiff does not object to this characterization in her opposition brief, *see, e.g.*, Pl.'s Opp'n at 2 ("I was also subjected to a hostile work environment and was subjected to harassment in the form of retaliation, after I amended my pending complaint to include

Ms. Edna Thomas."). The Court agrees with this reading of Plaintiff's complaint and will, therefore, evaluate Plaintiff's hostile work environment claim as one based upon retaliation.

"To prevail on a hostile environment claim based on previous participation in protected activity, a plaintiff must show that [s]he was subjected to retaliatory intimidation that was sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Jimenez v. McAleenan*, 395 F. Supp. 3d 22, 36 (D.D.C. 2019) (internal quotations and citations omitted). "Severity and pervasiveness are determined by reference to 'all the circumstances,' including 'the frequency of the [retaliatory] conduct; . . . whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Baird v. Gotbaum*, 792 F.3d 166, 169 (D.C. Cir. 2015) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). At bottom, the alleged "conduct must be extreme" to "ensure that Title VII does not become a general civility code" requiring courts to regulate "the ordinary tribulations of the workplace." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal quotation marks and citations omitted).

In its motion to dismiss, Defendant raises two arguments against Plaintiff's retaliatory hostile work environment claim. First, Defendant argues that Plaintiff improperly "relies upon the same alleged adverse actions that support her discrete retaliation claims to support her hostile work environment claim." Def.'s Mot. at 25. At the pleading stage, this initial argument does not merit dismissal. The D.C. Circuit has explained:

> [W]e find no authority for the idea that particular acts cannot as a matter of law simultaneously support different types of Title VII claims, and of course, plaintiffs are free to plead alternative theories of harm that might stem from the same allegedly harmful conduct. Thus, although a plaintiff may not combine discrete acts to form a hostile work environment claim without meeting the required hostile work environment standard, neither can a court dismiss a hostile work environment claim merely because it contains discrete acts that the plaintiff claims (correctly or incorrectly) are actionable on their own.

*Baird v. Gotbaum*, 662 F.3d 1246, 1252 (D.C. Cir. 2011).  Put otherwise, a plaintiff may support a hostile work environment claim by referencing discrete acts which also support individual retaliation claims.  *See Gilliard v. Gruenberg*, 302 F. Supp. 3d 257, 280 (D.D.C. 2018) ("Ms. Gilliard's hostile work environment claim is likewise not doomed by the fact that she earlier asserted some of the allegations as discrete Title VII claims.").  The Court, therefore, will not dismiss Plaintiff's hostile work environment at the motion to dismiss stage simply because it relies upon adverse actions also used to support discrete retaliation claims elsewhere in her complaint.

Next, Defendant contends more generally that Plaintiff's hostile work environment allegations "fall well short of showing that [her] workplace was so abusive so as to alter the conditions of her employment."  Def.'s Mot. at 25.  But again, the Court is unpersuaded by this argument at the pleading stage, where the Court must "accept as true all of the complaint's factual allegations and draw all reasonable inferences in favor of the plaintiff[]."  *Owens v. BNP Paribas, S.A.*, 897 F.3d 266, 272 (D.C. Cir. 2018).  In her complaint, Plaintiff alleges that following her EEO complaints in June and July of 2010, she suffered a series of harmful retaliatory actions at the hands of her supervisors.  For example, Plaintiff alleges that after her June 2010 EEO complaint, Ms. Thomas sent her a harassing email that complained about Plaintiff's EEO activity and removed Plaintiff from the office's "COOP" team.  Compl. ¶ 13.  Then, shortly after Plaintiff filed her July 2010 EEO complaint, Plaintiff's supervisors issued a counseling memorandum to Plaintiff, which they allegedly "fabricated" by including multiple false statements regarding Plaintiff's work performance.  *See id.* ¶¶ 17–23.  Similarly, Plaintiff received a negative performance review in October 2010, which was also allegedly inaccurate, *see id.* ¶ 27, and was later used to deny Plaintiff's request for medical leave, *see id.* ¶ 30.

Furthermore, Plaintiff alleges that during the Fall of 2010 Mr. Pafe attempted to "sabotage" her work product by manipulating electronic files, *see id.* ¶ 24, and, on one occasion, Mr. Pafe "laughed in [Plaintiff's] face" as she struggled to complete an office fire drill due to her pre-existing medical condition, *id.* ¶ 31. Then, in January 2011, Mr. Pafe placed Plaintiff on a Performance Improvement Plan, which allegedly contained more intentionally incorrect statements regarding Plaintiff's work performance. *See id.* ¶¶ 32–36. Mr. Pafe ultimately proposed Plaintiff's removal in August 2011, allegedly supporting that decision with additional misstatements regarding Plaintiff's work performance. *See, e.g.*, *id.* ¶¶ 46–47. Taken together, these allegations, accepted as true at the pleading stage, plausibly establish a severe and pervasive hostile work environment caused by Plaintiff's EEO complaints. *See, e.g.*, *Behrens v. Tillerson*, 264 F. Supp. 3d 273, 280 (D.D.C. 2017) (denying motion to dismiss retaliatory hostile work environment at the pleading stage); *Teliska v. Napolitano*, 826 F. Supp. 2d 94, 99 (D.D.C. 2011) (same and noting relatively low pleading standard for Title VII retaliation claims).

For the reasons set forth above, the Court will **DENY** Defendant's motion to dismiss Plaintiff's retaliatory hostile work environment claim at the pleading stage.[6]

---

[6] Because Defendant does not raise a specific exhaustion challenge to Plaintiff's hostile work environment claim, the Court need not address Plaintiff's exhaustion of her hostile work environment claim. *See Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997) (explaining that the defendant bears the burden of pleading exhaustion as an affirmative defense). Nonetheless, the Court notes that Plaintiff did raise a hostile work environment claim in her EEO complaint. *See* Jan. 6, 2011 Am. Compl., ECF No. 11-1, at 18–21. Moreover, "[b]ecause the exhaustion requirement on a hostile work environment claim is less stringent than for stand-alone claims of discrimination and retaliation, a plaintiff need only have filed an administrative complaint alleging some of the claims that [support] the hostile work environment claim." *Jimenez v. McAleenan*, 395 F. Supp. 3d 22, 34 (D.D.C. 2019) (internal quotations and citations omitted). "Thus, a plaintiff may incorporate non-exhausted allegations into a hostile work environment claim so long as some allegations were exhausted and all of the allegations together form one hostile environment claim." *Id.*

## C.   Race Discrimination and Disability Allegations

In addition to her retaliation claims, Plaintiff's complaint also includes allegations of racial discrimination, *see* Compl. ¶¶ 10, 12, 50–56, and allegations regarding the denial of "reasonable accommodations" for Plaintiff's medical condition, *see id.* at 2.   Plaintiff further asserts in her opposition brief that "[she] was subjected to race discrimination," Pl.'s Opp'n at 2, and also contends that her "inability to be able to obtain reasonable accommodations" at OBFM "caused [her] physical and mental pain," *id.* at 16.   Defendant argues, however, that while Plaintiff "mentions discrimination and discusses white comparators," her complaint does not assert a formal race discrimination claim.   Def.'s Mot. at 20 n.8.   Similarly, Defendant does not read Plaintiff's pleadings to assert a formal disability claim.   *Id.* at 15 n.7.

The Court agrees with Defendant that Plaintiff's pleadings do not provide adequate notice of either a race discrimination or a disability-based claim.   "While pro se litigants are held to less stringent standards than lawyers for pleading purposes even pro se litigants must comply with the Federal Rules of Civil Procedure, including Rule 8(a)[.]" *Paul v. Gov't of the District of Columbia*, 317 F. Supp. 3d 66, 74 (D.D.C. 2018), *aff'd sub nom. Paul v. Gov't of Columbia*, No. 18-7097, 2019 WL 1239848 (D.C. Cir. Mar. 14, 2019) (internal quotations and citations omitted).   Rule 8(a) requires, at a minimum, "a short and plain statement of the claim showing that the pleader is entitled to relief."   Fed. R. Civ. P. 8(a).   "The purpose of the minimum standard of Rule 8 is to give fair notice to the defendants of the claim being asserted, sufficient to prepare a responsive answer, to prepare an adequate defense and to determine whether the doctrine of res judicata applies." *Satterlee v. Comm'r of Internal Revenue*, 195 F. Supp. 3d 327, 334 (D.D.C. 2016).   Enforcing the requirements of Rule 8(a) "is largely a matter for the trial court's discretion." *Ciralsky v. CIA*, 355 F.3d 661, 669 (D.C. Cir. 2004).

The Court concludes that Plaintiff's race discrimination allegations do not satisfy Rule 8(a). To state a viable race discrimination claim under Title VII, a plaintiff must allege that she "suffered an adverse employment action (2) because of [her] race[.]" *Horsey v. United States Dep't of State*, 387 F. Supp. 3d 97, 105 (D.D.C. 2019), *aff'd*, 805 F. App'x 10 (D.C. Cir. 2020). "[F]or an adverse employment action to be taken 'because of' the plaintiff's protected status, 'discrimination must be a motivating factor in . . . [the] adverse employment action.'" *Id.* (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 370 (2013)). Even a generous reading of Plaintiff's pleadings fails to provide concise notice of such a claim. To start, Plaintiff's complaint does not formally assert a race discrimination claim under Title VII. Instead, the "Causes of Action" section within Plaintiff's complaint focuses expressly on allegations of harassment and retaliation. *See* Compl. at 20–21. And therein, even Plaintiff's passing reference to "discrimination" arises specifically within the context of retaliatory conduct. *See, e.g.*, *id.* at 21 ("In violation of Title VII, the Department *discriminated* against the Plaintiff *because* she made a charge of employment discrimination.") (emphasis added).

Furthermore, the race-based allegations scattered throughout Plaintiff's pleadings are untethered to a discernable theory of race discrimination under Title VII. As an initial matter, a number of Plaintiff's race-based allegations, such as the allegation that Ms. Thomas referred to another OBFM employee as a "House Nigger," *id.* ¶ 12, or Mr. Pafe's alleged harassment of another African American employee named Miranda Johnson, *id.* ¶ 56, do not apply directly to Plaintiff herself. Moreover, it is not clear from the pleadings, how Plaintiff's race-based allegations are connected to any of the adverse actions she raises. *See Horsey*, 387 F. Supp. 3d at 107 (explaining that race discrimination claim must allege that some adverse action occurred "because of" the employee's race). For example, Plaintiff alleges that her former supervisor Mr.

Roy "isolated" Plaintiff from her white co-workers at OBFM, *see id.* ¶¶ 9–10, but none of Plaintiff's allegations connect this race-based allegation to any of the alleged adverse employment action mentioned in her complaint. The same holds true for Plaintiff's allegations regarding white comparators. *See id.* ¶¶ 52–56. Although these race-based allegations about disparate treatment received by white employees at OBFM could be relevant to a race discrimination claim, Plaintiff's pleadings still fail to provide notice of the adverse actions she suffered specifically because of her race. As noted above, Plaintiff's pleadings connect her alleged adverse actions to her EEO complaints and, consequently, sound in retaliation. *See id.* at 20–21 (setting forth "Causes of Action"). In short, Plaintiff's pleadings are too vague and imprecise to provide adequate notice of a formal race discrimination claim under Rule 8.

Next, the Court finds that Plaintiff's disability-based allegations similarly fail to provide adequate notice of a viable claim under Rule 8(a). In her complaint, Plaintiff alleges with generality that she was "denied reasonable accommodations because of a performance rating that was issued as part of a campaign to retaliate and harass." Compl. at 2. Plaintiff then later alleges that in the Fall of 2010, she requested to work from home due to her "medical condition," but that the Department denied that request. *Id.* ¶ 30. Plaintiff's opposition brief also references her inability "to obtain reasonable accommodations for [a] serious illness." *Id.* at 16.

These allegations are simply too vague to provide adequate notice of a disability-based claim under Rule 8(a). Here again, the "Causes of Action" section in Plaintiff's complaint makes no reference to Plaintiff's purported disability, nor does it reference a claim based upon a denied workplace accommodation. *See* Compl. at 20–21. And to the extent Plaintiff is seeking relief under the Rehabilitation Act, *see, e.g.*, *Nurriddin v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016) (explaining the applicability of the Rehabilitation Act to federal agencies), she fails to invoke the

statute anywhere in her complaint and does not make such a claim clear in her opposition brief. Moreover, it is also unclear from Plaintiff's pleadings what "medical condition" she is relying upon to support her disability-based claim. *See Congress v. District of Columbia*, 324 F. Supp. 3d 164, 169 (D.D.C. 2018) ("To state a claim [under the Rehabilitation Act], a plaintiff must allege . . . that she has a disability as defined in the ADA or Rehabilitation Act . . . "). The absence of such foundational allegations prohibitively obscures any disability-based claim Plaintiff might be attempting to raise in her current pleadings.

For the reasons set forth above, the Court concludes that, even when construing Plaintiff's *pro se* pleadings broadly, Plaintiff's race discrimination and disability allegations fail to plainly and concisely state a claim that satisfies the basic notice requirements of Rule 8(a). *See Ciralsky*, 355 F.3d at 669. Accordingly, the Court will **DISMISS** Plaintiff's purported race discrimination and disability-based claims **WITHOUT PREJUDICE**. Finally, the Court notes that Plaintiff's opposition brief makes a passing request to amend her pleadings, in the event that "the Court is confused" about their contents. Pl.'s Opp'n at 2. Plaintiff, however, did not file a separate motion for leave under Rule 15(a). In violation of this Court's local rules, Plaintiff also failed to attach any proposed amended complaint for the Court to consider. *See* Local Civil Rule 7(i) ("A motion for leave to file an amended pleading shall be accompanied by an original of the proposed pleading as amended."). Given the lack of clarity regarding Plaintiff's request for an amendment, the Court will exercise its discretion and **DENY** Plaintiff leave to amend at this juncture. *See Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) ("[T]he grant or denial of leave to amend is committed to a district court's discretion."). Nonetheless, in light of Plaintiff's *pro se* status, the Court denies her request for leave to amend her complaint **WITHOUT PREJUDICE**. If Plaintiff

attempts to amend her pleadings in the future, she should file a separate motion for leave under Federal Rule of Civil Procedure 15(a) and comply with Local Civil Rule 7(i).

## IV.    CONCLUSION

For the reasons provided herein, the Court shall **GRANT IN PART** and **DENY IN PART** Defendant's [11] Motion to Dismiss. The Court **GRANTS** Defendant's motion to dismiss Plaintiff's discrete retaliation claims predicated on Plaintiff's removal from the Department's "COOP" emergency response team, the denial of Plaintiff's requested detail assignment, and Plaintiff's proposed removal from federal service.  The Court, however, **DENIES** Defendant's motion to dismiss Plaintiff's remaining retaliation claims predicated on Plaintiff's September 13, 2010 Counseling Memorandum, her negative 2010 performance review, and her January 5, 2011 Performance Improvement Plan.  Next, the Court **DENIES** Defendant's motion to dismiss Plaintiff's claim for a retaliatory hostile work environment.

Finally, the Court **DISMISSES** Plaintiff's race discrimination and disability claims, as Plaintiff has not provided a plain and concise statement of those claims as required by Federal Rule of Civil Procedure 8.  Plaintiff's request to amend her complaint to address its vagueness is **DENIED WITHOUT PREJUDICE**.  An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

**Date**: June 21, 2021

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge